1 | STEVEN T. JAFFE, ESQ.
Nevada Bar No. 007035
2 | sjaffe@lawhjc.com
JASON R. WIGG, ESQ.
3 | Nevada Bar No. 007953
jwigg@lawhjc.com
4 |

HALL JAFFE & CLAYTON, LLP
5 | 7425 PEAK DRIVE
LAS VEGAS, NEVADA 89128
6 | (702) 316-4111
FAX (702) 316-4114
7 |

*Attorneys for Defendants/Third-Party*
8 | *Plaintiffs Legacy Transportation Systems,*
*LLC, Angeles Transportation, LLC &*
9 | *Leoncio Angeles*

10 | **UNITED STATES DISTRICT COURT**

11 | **DISTRICT OF NEVADA**

12 | SARAH DIXON,                          CASE NO.  2:15-cv-01359-JAD-PAL

13 |                Plaintiff,

14 | vs.                                    **ANGELES TRANSPORTATION, LLC'S**
**MOTION FOR PARTIAL SUMMARY**
15 | LEGACY TRANSPORTATION SYSTEMS,          **JUDGMENT**
LLC,; a Utah Limited Liability Company;
16 | ANGELES TRANSPORTATION, LLC; a Utah
Limited Liability Company, LEONCIO
17 | ANGELES,

18 |                Defendants.

19 | ————————————————————————

20 | ALL RELATED THIRD-PARTY CLAIMS

21 |        Defendant/Third-Party Plaintiff Angeles Transportation, LLC  ("Transport"), by and

22 | through its attorneys, Steven T. Jaffe, Esq., and Jason R. Wigg, Esq., of the law firm of Hall, Jaffe

23 | & Clayton, LLP, hereby moves this court for an order entering partial summary judgment in its

24 | favor as to: (1) Plaintiff's second claim for relief for respondeat superior; (2) Plaintiff's third

25 | claim for relief for punitive damages; (3) Plaintiff's Fourth claim for relief for negligent

26 | employment, supervision and training, and (4) Plaintiff's prayer for punitive damages,  pursuant

27 | to FRCP 56 on the grounds that there are no genuine issues of material fact.  Transport is entitled

28 | to judgment as a matter of law because: (i) respondeat superior is a theory of liability, not a

separate cause of action; (ii) punitive damages are a remedy, not a legitimate basis for an independent cause of action; (iii) it is impossible for Transport to have negligently employed, supervised or trained the driver of the tractor at the time of the accident, Leoncio Angeles ("Leoncio") because he is the owner of company and cannot negligently employ, supervise or train himself; (iv) Plaintiff cannot offer any admissible evidence that Transport negligently employed, supervised or trained its owner, Leoncio; and (iv) Plaintiff cannot offer any admissible evidence sufficient to meet Nevada's high threshold for an award of punitive damages. In support of this motion, Transport relies on the pleadings, depositions, answers to interrogatories, admissions and the Memorandum of Law submitted below.

**MEMORANDUM IN SUPPORT OF ANGELES TRANSPORTATION, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.  RELEVANT BACKGROUND AND ALLEGATIONS

This case arises out of a motor vehicle accident which occurred on August 11, 2013.  At that time, Plaintiff Sarah Dixon was riding as a passenger in a black, 2-door, 2009 Mitsubishi Eclipse driven by Third-Party Defendant Ryan Richards ("Richards").  They were traveling southbound on I-15 with heavy traffic at the same time Leoncio was also driving southbound on I-15 operating his tractor-trailer on behalf Transport, which had entered into an agreement to transport property for Legacy Transportation ("Legacy," collectively with Leoncio and Transport, the "Legacy Defendants"), a Utah-based trucking company.  Prior to the accident, Richards, while intoxicated, began driving southbound on the paved shoulder of I-15 to the right of the number 3 travel lane.  Plaintiff alleges she was injured when Richards lost control of the car he was driving because, according to Plaintiff, Leoncio drove his tractor into the shoulder from the number 3 travel lane and in front of Richards and Plaintiff, which resulted in Richards' swerving off of the shoulder and into the unpaved grave whereupon Richard's vehicle began sliding sideways.  After the vehicle reentered the roadway, its passenger-side made impact with the rear of another southbound vehicle, allegedly causing injuries to Plaintiff.

In her third cause of action for "punitive damages," Plaintiff alleges that Leoncio "knew there [sic] it was improper to change into the shoulder lane, when a vehicle was occupying the

lane" and that despite knowing of the presence of the another vehicle in the "lane," Leoncio, "elected to drive a semi-truck into the path of an oncoming vehicle" and that "such conscious disregard for the safety of plaintiff within the meaning of NRS 42.005, and [sic] warrants the issuance of punitive damages."  *See* Plaintiff's Complaint, [ECF No 3] at p.5:12-28.  Plaintiff, however, has failed to offer any actual, admissible evidence of malice or oppression by Leoncio whatsoever.

Plaintiff also impermissibly alleges Respondeat Superior – a theory of liability – as a cause of action against Transport (Second Cause of Action) and a separate, stand-alone cause of action for punitive damages in addition to her punitive damages prayer for relief.  Punitive damages are a remedy, not an independent cause of action. Thus, Transport is entitled to summary judgment on: (1) Plaintiff's second claim for relief for "respondeat superior;" (2) Plaintiff's  third claim for relief for punitive damages; (3) Plaintiff's fifth claim for relief for Negligent Employment/Supervision/Training; and (4) Plaintiff's prayer for punitive damages

## II.   CONCISE STATEMENT OF EACH FACT MATERIAL TO THE DISPOSITION OF TRANSPORTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to LR 56-1, Transport submits the following concise statement setting forth each fact material to the disposition of this motion that he contends is not genuinely at issue.

**1.**   Legacy was and is engaged in the business of interstate and intrastate transportation of property as a common and contract carrier by motor vehicle.  *See* **Exhibit 1**; see also Leoncio's deposition transcript at pp.41:14 – 44:19, attached as **Exhibit 2**.

**2.**   Leoncio was contracted to Legacy as an independent contractor through Transport at the time of the event.  *See* Legacy Transportation System, LLC's Answer to Plaintiff's First Set of Interrogatories, No. 7, at p.9:2-17, attached as **Exhibit 3**.

**3.**   Transport is a company owned and operated by Leoncio. *See* **Exhibit 2** at p.34:18-24.

**4.**   Legacy contracted with Leoncio (via Transport) because he passed the requirements.  *See* deposition transcript of Legacy's FRCP 30(b)(6) witness, Chad Ryan ("Ryan") attached as **Exhibit 4**, at p.23:8-20.  Those requirements included completing an application for

employment, having a commercial driver's license, being over the age of 21 and passing a background check. *Id.* at pp.23:21 – 24:9.

**5.** Legacy considered Leoncio to be a good driver and a "dedicated man" who "moved up the latter pretty quickly." **Exhibit 4** at pp.28:6 – 29:6. Although he may have been verbally advised to improve on "this or that," there was never any written discipline nor anything of significance for which Leoncio was disciplined by Legacy. *Id.*

**6.** On the day of the accident, August 11, 2013, Leoncio was scheduled to drive his tractor on his regular route or trip from Salt Lake City, Utah trip to Brea, California. **Exhibit 2** at pp.67:14 – 68:12.

**7.** Leoncio estimates that he has made this trip more than a hundred times. *Id.* at p.68:13-23.

**8.** Leoncio started his trip from his house at 9:30 a.m. August 11, 2013. He had been off-duty the entire day before. *Id.* at p.69:3-11.

**9.** Leoncio did not have a specific arrival time in California – he knew he "had to do the delivery the following day." *Id.* at pp.68:24 – 69:2.

**10.** After commencing the trip to California, Leoncio noted the traffic between Las Vegas and Jean, Nevada, was "slow." *Id.* at pp.72:5-8.

**11.** Traffic is normally slow on Sunday afternoons between Las Vegas and the state line with California and/or Primm. *Id.* at p.72:12-15.

**12.** Leoncio testified that, prior to the accident, he was driving in the right-hand lane at about 20 miles per hour. *Id.* at p.79:16-21.

**13.** Leoncio then saw in his passenger side-mirror that a car approximately one-half mile away was traveling southbound on the shoulder at approximately 65 miles per hour. *Id.* at pp.79:22 – 80:11

**14.** In his deposition, Leoncio confirmed the accuracy of the written statement he provided to the police following the accident, as follows:

> Q.   Okay.  Can you read for me and for the record what you wrote here starting right there?

1      A.     Yes.  I can read it.

2      Q.     Would you, please?....

3      THE WITNESS:  I was driving on my lane on the right side.  And I saw a car coming at a high rate of speed.  And it passed me by the

4      shoulder and started to skid on the -- on the gravel and enter the highway, hitting another one, hitting another vehicle.  ***And then I***

5      ***went into the shoulder <u>after</u> the accident, because ahead of me there would -- about two vehicles traveling ahead of me.***  And I

6      continued driving so I would not hit anyone.  And nobody hit me.

7      Q.     Thank you.  As you sit here today, do you still agree with that statement?

8

9      A.     Yes, I am [sic].

*Id.* at pp.78:11 – 79:15 (emphasis added).

10      **15.**     Leoncio later testified that he did not "move over to the right" (i.e. from the

11  number 3 travel lane into the shoulder of Southbound I-15) immediately prior to the accident, as

12  follows:

13      Q.     Immediately prior to the accident, it is your testimony today that you did not move over to the right and there was nothing in the

14      road and you had no cause for you to move over to the right; is that correct?

15      A.     Correct.

16  *See* Leoncio's June 9, 2017 deposition transcript, attached as **Exhibit 5**, at p.47:7-12.

17      **16.**     Witness Darrel C. Brown ("Brown"), testified that he believes he observed a part

18  of Leoncio's truck cross into the shoulder briefly prior to accident, although he was not certain

19  when it occurred, he testified that the movement into the shoulder was "minor" and not "hyper

20  aggressive."  Brown testified as follows:

21      Q.     Did you ever see the truck pull back into the travel lane?

22      A.     Yes, but timeline wise I don't know if it was, you know, right after

23      the vehicle passed him or at the point of spinning out. I'm not sure when but I do remember -- I remember him going into the shoulder

24      or the truck going into the shoulder and then coming back in because it was such a -- it looked like ***such a minor kind of move***.

25      It was -- it really didn't -- it wasn't one -- it ***wasn't a hyper aggressive kind of move***. So when I turn around or I mean I look

26      in front of me, I see the vehicle move into the shoulder. And then, you know, I see it driving back in and traffic clears up and

27

28      everyone is gone except for the accident.

*See* Darrel C. Brown's deposition transcript attached as **Exhibit 6**, at p.43:2 – 8 (emphasis added).

      **17.**    Brown further testified that Leoncio's "minor kind of move" into the shoulder provided sufficient time for Richards to react and avoid any collision, as follows:

> Q.    What did you mean by a non-hyper aggressive move?
>
> A.    So what I mean is it wasn't a sudden and abrupt movement into the shoulder. It was a movement that would have provided enough time for me to be able to react if I was watching the driver making that move.
>
> Q.    If you were driving the Mitsubishi you mean?
>
> A.    Yes.
>
> Q.    You would have had enough time you believe –
>
> A.    Yes.
>
> Q.    -- to avoid –
>
> A.    To slow down, yes.
>
> ***Q.***    ***To slow down sufficiently to avoid an accident?***
>
> ***A.***    ***Yes.***
>
> ***Q.***    Okay. So the way that you characterize it suggests to you that the move was -- ***the move from the travel lane into the shoulder wasn't quick or sudden. It was more gradual and, therefore, not a non-hyper aggressive move. Is that fair to say?***
>
> ***A.***    ***Yes…..***

*Id.* 93:15 – 94:24 (emphasis added).

      **18.**    Brown further testified,  based on what he observed, that to the extent part of Leoncio's truck traveled into the shoulder, that it may have been unintentional, as follows:

> Q.    Now I do have follow-up questions. To the extent it was a gradual move into the roadway -- into the shoulder rather, it could have been unintended as far as you know?
>
> MR. CARMAN: Calls for speculation
>
> THE WITNESS: Yes.
>
> BY MR. WIGG:
>
> ***Q.***    ***In other words the truck driver could have maybe started veering***

*into the shoulder and not realized it and never intended to go into the shoulder at all, right?*

**A.     Yes.**

*Id*. 97:3 – 13. (emphasis added).

19.     The officer/trooper who responded to the scene, Trooper Michael Tully, ("Tully") testified that the two witnesses statements he read (in English), one from Brown and another from Daniel Allen ("Allen") do not indicate that they believed Leoncio acted intentionally, as follows:

**Q.     …The question is there anything in either of the two statements that indicates that they believed that Leo intentionally pulled in front of the Richards vehicle?**

**A.     No.**

**Q.     And is there anything in your Narrative that indicates that you were told that Leo appeared to have intentionally pulled in front of the Richards vehicle?**

**A.     The only thing that's in the Narrative, it says he made an unsafe lane change to the right paved shoulder.  But that was not known as an intentional act. He just pulled over.**

**Q.     So there's nothing in the Narrative section of your report that indicates that Leo intentionally pulled in front of the Richards vehicle, true?**

**A.     Correct.**

*See* relevant portions of Trooper Tully's deposition transcript attached as **Exhibit 7**, at pp.178:10 – 179:1. (emphasis added).

20.     After seeing the accident, Leoncio intentionally drove into the emergency lane to avoid colliding with the vehicles in front of him. **Exhibit 2**. at p.81:2-25.

21.     After the event, Leoncio telephoned Chad Ryan ("Chad"), his supervisor at Legacy, to advise he had been pulled over by the police and to tell Ryan what had occurred. **Exhibit 4** at pp.40:15 – 41:19; **Exhibit 2** at pp.87:15 – 88:15.

22.     Chad instructed to Leoncio to take a drug test and to write down what he had observed.  **Exhibit 2** at p.89:1-5; **Exhibit 4** at pp.42:4 – 44:44.

23.     Leoncio completed the required drug test within the mandatory time-fame. **Exhibit 4** at p.42:4 – 44:44.  The results of the test were negative.  *Id*.  Leoncio never failed a

1    drug test during the time he was Legacy's statutory employee. *Id*. at p.44:8-11.

2        **24.**     On the other hand, Richards' BAC after the accident was determined to be 0.107

3    g/100mL. *See* Toxicology Report & Declaration of Christine Maloney, Bates Number NHP-

4    00104, attached as **Exhibit 8**; *see also* deposition testimony of Dr. Christine Maloney, attached as

5    **Exhibit 9**, at p.10:7-19.

6        **25.**     At the hearing on Richards' renewed motion for determination of good faith

7    settlement, Plaintiff's counsel, Eric Dobberstein, Esq., stated to the Court that he did not

8    necessarily believe Leoncio acted intentionally, as follows:

9         ….***Whether [Leoncio] -- and I don't necessarily believe he did it intentionally***,
10         but he either did it intentionally because he did not like seeing Mr. Richards's
          vehicle driving on the shoulder road and approaching all the stopped traffic and
11         trying to get ahead of him into an open space and cutting him off or he wasn't
          paying attention because he was too focused upon Mr. Richards's vehicle
12         approaching and didn't look at the vehicles in front of him stop and he abruptly
          tried to avoid hitting a vehicle in front of him thus negligently going into the
13         shoulder where there was a car moving up on which, according to the Trooper,
          Mr. Richards had control of that lane and had every right to continue to use it.

14    *See* relevant portion of Reporter's Transcript of Proceedings, dated June 2, 2017, attached hereto

15    as **Exhibit 10** at 16:7-21. (*emphasis added*).

16                           **III.  ARGUMENT**

17        Transport is entitled to summary judgment on Plaintiff's second claim for relief

18    (respondeat superior) and third claim for relief (punitive damages) because they are not

19    independent, stand-alone causes of action as a matter of law.  Transport is also entitled to

20    summary judgment on Plaintiff's fourth claim for relief (Negligent

21    Employment/Supervision/Training) because Plaintiff has not offered any admissible evidence in

22    support of this cause of action and because Leoncio is the owner of Transport and cannot be liable

23    for hiring, training or supervising himself.  Finally, Transport is entitled to summary judgment on

24    Plaintiff's punitive damages prayer for relief because, as the undisputed facts demonstrate,

25    Plaintiff cannot offer any admissible evidence sufficient to meet Nevada's high threshold for an

26    award of punitive damages.

27        **B.**      **Standard for Summary Judgment**

28        Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Summary judgment is "not warranted if a material issue of fact exists for trial." ***Ribitzki v. Canmar Reading & Bates***, 111 F.3d 658, 661-62 (9th Cir. 1997). A material fact is one that "might affect the outcome of the suit under the governing law . . .." ***Lindahl v. Air France***, 930 F.2d 1434, 1436 (9th Cir. 1991) (*citing* ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 248-49 (1986)). Further, any dispute regarding a material issue of fact must be genuine-the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. If there is no material factual issue on any one of the basic elements of a claim, summary judgment should be granted. A material fact is one required to prove a basic element of a claim. ***Liberty Lobby***, 477 U.S. at 248. A party's uncorroborated and self-serving testimony, without more, will not create a genuine issue of material fact precluding summary judgment. ***Villiariamo v. Aloha Island Air Inc.,*** 281 F.3d 1054, 1061 (9th Cir. 2002).

     "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper." ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp***., 475 U.S. 574, 587 (1986). The burden of proving the absence of a genuine issue of material fact lies with the moving party; accordingly, "[t]he evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party."  *Id*. (*citing* ***Liberty Lobby***, 477 U.S. at 255); ***Martinez v. City of Los Angeles***, 141 F.3d 1373, 1378 (9th Cir. 1998).  If the moving party presents evidence that would call for judgment as a matter of law, then the opposing party must show by specific facts the existence of a genuine issue for trial.  ***Liberty Lobby***, 477 U.S. at 250; Fed. R. Civ. P. 56(e). To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus***., 475 U.S. at 586. "If the evidence [proffered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." **Liberty Lobby**, 477 U.S. at 249-50. In other

1   words, the non-moving party cannot avoid summary judgment by relying solely on conclusory

2   allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

3   1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and

4   set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*

5   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324(1986).

6          **C.**     **Plaintiff's Second Claim for Relief for "Respondeat Superior" Fails as a Matter of Law**

7          Transport's Motion for Partial Summary Judgment should be granted as to Plaintiff's

8   second claim for relief, because "respondeat superior" is a theory of liability, not a cause of

9   action. *See Garcia v. Nevada Property 1, LLC*, 2015 WL 67019, 3, Case No. No. 2:14–CV–1707

10  JCM (D.Nev 2015) ("Respondeat superior is a theory of liability, not a cause of action."), *citing*

11  *Mitschke v. Gosal Trucking, LDS*., et al., 2:14–cv–1099 JCM (VCF), 2014 WL 5307950, at *2–

12  3 (D.Nev. Oct. 16, 2014) ("Because respondeat superior is a theory of liability rather than a cause

13  of action, the court will dismiss plaintiff's sixth claim"); *Fernandez v. Penske Truck Leasing*

14  *Co., L.P.*, 2:12–cv–295 JCM (GWF), 2012 WL 1832571, at *1 n .1 (D.Nev. May 18, 2012).

15         Judgment should be entered in Transport's favor on Plaintiff's so-called respondeat

16  superior cause of action.  As was discussed in Legacy's Motion for Partial Summary Judgment

17  [ECF No. 129], Legacy has stated that it will be vicariously liable for Leoncio's negligence, if

18  any, since Legacy admitted in its answer that Leoncio was acting within the course and scope of

19  his employment – as a statutory employee – a the time of the accident at issue. *See* Answer and

20  Third-Party Complaint and Jury Demand [ECF No. 12] at p.¶ 6; *see also* 49 CFR 376.12(c)(1)

21  ("…The lease shall further provide that the authorized carrier lessee shall assume complete

22  responsibility for the operation of the equipment for the duration of the lease.").  Accordingly,

23  Transport's Motion for Partial Summary Judgment as to Plaintiff's second claim for relief for

24  respondeat superior should be granted as a matter of law.

25        **D.**     **Plaintiff's Third Cause of Action for Punitive Damages Against Transport**

26                **Fails as A Matter of Law**

27           **1.**     **Punitive Damages Are Not a Stand-Alone Cause of Action**

28         It is well settled that punitive damages are a remedy, not a separate, stand-alone cause of

action.  *See Garcia v. Nevada Property 1, LLC*, 2015 WL 67019, *4, Case No. No. 2:14–CV–1707 JCM (D.Nev 2015) ("Punitive damages, like plaintiff's vicarious liability and respondeat superior claims, are not a legitimate basis for an independent cause of action. Punitive damages are one remedy that the court may impose upon a finding of liability. Therefore, plaintiff's sixth cause of action for punitive damages will be dismissed"); *Mitschke v. Gosal Trucking, LDS*, 2014 WL 5307950, No. 2:14–CV–1099 JCM (D.Nev 2014) (Order by Judge Mahan granting dismissal of punitive damages cause of action because "[p]unitive damages, like many of plaintiff's other claims, do not provide an independent cause of action.")  Neither of the aforementioned orders included the substantive dismissal of the remedy that punitive damages affords; rather, in both cases, Judge Mahan simply dismissed punitive damages as a separate cause of action.  *See Garcia* at *4 ("[t]his does not preclude plaintiff from requesting punitive damages at a later date.").  As applied here, and relevant to this portion of Transport's Motion for Partial Summary Judgment, because punitive damages is not a stand-alone cause of action, Transport's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Cause of Action Should be Granted as a matter of law.[1]

**E.      Plaintiff's Fourth Claim for Relief For Negligent Employment Supervision and Training Fails as a Matter of Law**

**1.      Because Leo is the owner of Transport, it cannot be liable to Plaintiff for Negligently Hiring, Supervising or Training Him as a Matter of Law.**

Judge Navarro ruled in *Enriquez v. Red Rock Financial Services, LLC*, 2015 WL 1186570, *2, Case No. 2:14–cv–02118–GMN–CWH (D. Nev 2015),  "[t]he tort of negligent hiring imposes 'a general duty on an employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position,'" *citing Hall v. SSF, Inc*., 930 P.2d 94, 98 (Nev.1996). This duty is breached when the employer "hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities." *Id*.  Additionally, an employer "has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions."

---

[1] Transport separately addresses Plaintiff's punitive damages prayer for relief in section F, below.

1  *Enrique* at * 2, *citing Hall*, 930 P.2d at 99.  To state a claim for negligent training and

2  supervision, a plaintiff must prove "(1) a general duty on the employer to use reasonable care in

3  the training and/or supervision of employees to ensure that they are fit for their positions; (2)

4  breach; (3) injury; and (4) causation." *See Reece v. Republic Services, Inc.*, 2011 WL 868386,

5  *11 (D.Nev. Mar. 10, 2011). Claims for negligent training and supervision are based upon the

6  premise that an employer should be liable when it places an employee, who it knows or should

7  have known behaves wrongfully, in a position in which the employee can harm someone else.

8  *See Okeke v. Biomat USA, Inc.*, 927 F.Supp.2d 1021, 1028 (D.Nev.2013), *citing Daisley v.*

9  *Riggs Bank, N.A.*, 372 F.Supp.2d 61, 79 (D.D.C.2005).

10      An employee's wrongful behavior does not in and of itself give rise to a claim for

11  negligent training and supervision."  *Okeke* at 1028, *citing Colquhoun v. BHC Montevista*

12  *Hospital, Inc.*, 2010 WL 2346607, *3 (D.Nev. June 9, 2010).  In order to maintain a claim for

13  negligent hiring, supervision, or training in Nevada, a plaintiff must demonstrate that his or her

14  employer breached its duty to properly hire, train, or supervise its employees." *See Colquhoun v.*

15  *BHC Montevista Hosp., Inc.* 2010 WL 2346607, *3 Case No. 2:10–cv–00144–RLH–PAL (D.

16  Nev. 2010), *citing Burnett v. C.B.A. Sec. Service, Inc.*, 107 Nev. 787, 789, 820 P.2d 750, 752

17  (1991) *and Jespersen v. Harrah's Operating Co.*, 280 F.Supp.2d 1189 (D. Nev 2002).  The fact

18  that an employee acts wrongfully, however, "does not in and of itself give rise to a claim for

19  negligent hiring, training, or supervision." *Colquooun* at *3, *citing Burnett,* 107 Nev. 787, 820

20  P.2d 750.

21      As applied to the instant matter Plaintiff alleges that Transport failed to properly

22  investigate Leoncio – the founder and owner of the Company – prior to "hiring him," failed to

23  train him in the proper manner to operate a truck,  failed to supervise him during his

24  "employment" and thereby breached its duty to properly supervise and train its drivers. Of course,

25  all of the these allegations are absurd, at least in the context of the instant matter as Leoncio is the

26  founder and owner of the company and the person driving the tractor at the time of the accident at

27  issue in this case.  Thus, it is impossible for Transport to hire, train or supervise the person who

28  owns and operates the business. *See Haubry v. Snow*, 2001 WL32089, *6  (Wash 2001) ("To

support Haubry's theory, Dr. Snow (in his corporate capacity in Lawrence W. Snow, M.D., P.S.) *would be liable in a situation where he was legally responsible for hiring and retaining himself. This is a direct claim, not one for negligent hiring, supervision, or retention.* The trial court was correct in dismissing this claim.") (emphasis added).

Based on the foregoing, Transport is entitled to judgment in its favor on Plaintiff's Fourth Claim for Relief as a matter of law.

### 2.    There is No Evidence to Support a Claim for Negligent Employment, Retention and Supervision Against Transport

Assuming *arguendo* that Transport could hire, retain or supervise its owner, Plaintiff has failed to present any admissible evidence whatsoever that Transport was negligent in the "hiring, retaining or supervising of Leoncio, as its owner, in this case.   In fact, Plaintiff has not offered any evidence whatsoever relative to Transport's hiring, retaining or supervising of its owner. Thus, even if the cause of action were viable in this instance, Plaintiff has failed to carry her burden of proof relative to the hiring, retention and supervision practices.  Transport is therefore entitled to summary judgment on Fourth claim for relief as a matter of law.

### 3.    Leoncio was a Statutory Employee of Legacy

As previously stated, Leoncio was a statutory employee of Legacy at the time of the accident pursuant to 49 CFR 376.12(c)(1) and Legacy has admitted Leoncio was acting within the course and scope of his employment at the time of the accident at issue in this case.  It is a well-settled principal of law that a plaintiff may not proceed with a claim for negligent employment, supervision and training if the employer concedes vicarious liability employee whose conduct is at issue was acting in the course and scope of his or her employment when the allegedly negligent act occurred.  *See **Durben v. American Materials, Inc.**,* 232 Ga.App. 750, 503 S.E.2d 618 (Ga. Ct. App. 1998)(when employer admits applicability of respondeat superior doctrine to employee's actions, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention); ***Perkins v. City of Rochester***, 641 F.Supp.2d 168 (W.D.N.Y. 2009)(where an employee is acting within the scope of his or her employment, the employer's liability for his conduct is imposed by the theory of respondeat superior, and no recovery can be had against the

employer for negligent hiring, training, or retention).  Indeed, a majority of courts have held that a negligent employment, supervision and training claim becomes redundant when an employer admits it is vicariously liable for the employee's direct liability, if any.  As stated by the court in *Lee v. JB. Hunt Transp., Inc.*, 308 F.Supp.2d 310 (S.D.N.Y. 2004)

> Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay for the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.

*Id*. at 312, *quoting Karoon v. N.Y.C. Transit Auth*., 659 N.Y.S.2d 27, 29 (App. Div. 1997));

The rationale in support of the foregoing was explained at length by Judge Navarro in *Alvares v. McMullin*, 2015 WL 3558673, *3, Case No. 2:13-cv-02256-GMN-CWH (D. Nev. 2015), a case in which Judge Navarro granted partial summary judgment on a claim for negligent entrustment, hiring, training, supervision and maintenance:

> Though the Supreme Court of Nevada has not directly addressed the issue of whether a plaintiff may assert claims for negligent entrustment, supervision, or maintenance against an employer when it has admitted the employee was acting within the course and scope of employment when the injury occurred, the majority of jurisdictions—including California [footnote omitted]— have held that such claims, when premised on the negligent act of the employee, are barred once respondeat superior liability is established. *See, e.g., Diaz v. Carcamo*, 253 P.3d 535, 538 (Cal. 2011) (finding that a plaintiff in a vehicle collision action may not sue an employer for negligent entrustment when the employer has admitted respondeat superior liability); *Durben v. Am. Materials, Inc.*, 503 S.E.2d 618, 619 (Ga. Ct. App. 1998) ("Generally, when an employer admits the applicability of respondeat superior, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention."). The rationale for this rule is that the employer is still only liable for the employee's negligence, the plaintiff cannot recover any more in damages than he would recover under a theory of respondeat superior, and the collateral evidence of the other claims would likely be irrelevant and inflammatory. *See Jeld-Wen, Inc. v. Superior Court*, 32 Cal. Rptr. 3d 351, 356 (Cal. Ct. App. 2005) (citing *Powell, Submitting Theories of Respondeat Superior and Negligent Entrustment/Hiring* 61 Mo. L.Rev. 155, 162 (1996)). All three of these rationales are present in this case, and the Court predicts that Nevada would adopt the majority rule in situations like the present one, where the direct claims of negligence against the employer rest entirely upon the alleged negligence of the employee and are therefore superfluous with the claim for respondeat superior liability. *See Adele v. Dunn*, No. 2:12-CV-00597-LDG, 2013 WL 1314944, at *2 (D. Nev. Mar. 27, 2013) ("The court predicts that Nevada would adopt the majority rule such that, in situations in which a motor carrier admits vicarious liability for the conduct of a driver, direct claims of negligent entrustment or negligent training and supervision against a

motor carrier would be disallowed where those claims are rendered superfluous by the admission of vicarious liability."); *cf. State, Dep't of Human Res., Div. of Mental Hygiene & Mental Retardation v. Jimenez*, 935 P.2d 274, 284-85 opinion withdrawn, reh'g dismissed, 941 P.2d 969 (Nev. 1997) ("Therefore, while the State was liable on the theory of negligent supervision, we conclude that the district court erroneously awarded damages on that claim when John Doe was fully compensated on the theory of respondeat superior.").

Leoncio was a statutory employee of Legacy at the time of the accident pursuant to 49 CFR 376.12(c)(1) and Legacy admitted that Leoncio was acting within the course and scope of his employment at the time of the accident at issue in this case.  *See* Exhibits 1 – 4, *supra*. Accordingly, judgment should be entered in favor of Transport on Plaintiff's claim for negligent employment, retention and supervision as a matter of law.

**F.     Plaintiff's Third Cause of Action for Punitive Damages Against Transport Fails as A Matter of Law**

Plaintiff's prayer for punitive damages against Transport fails as a matter of law because Plaintiff cannot offer sufficient admissible evidence necessary to prove at trial, *by clear and convincing evidence,* that Leoncio is "guilty of oppression, fraud or malice...." NRS 42.005(1).  If Plaintiff cannot satisfy her burden of proof relative to her punitive damages claim against Leoncio then Plaintiff's punitive damages claim against Transport fails as matter of law.  And, because there is insufficient admissible evidence to support a punitive damages recovery against Leoncio, it necessarily follows that Transport, the company owned by Leoncio and the entity that contracted with Legacy, cannot be liable to Plaintiff for punitive damages as a matter of law. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Plaintiff cannot offer any evidence that meets Nevada's high threshold for punitive damages, which ultimately requires clear and convincing evidence of "oppression" or "malice" (there is no allegation of fraud).  NRS  42.005(1).  Nevada law defines "oppression" as despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person.  NRS  42.001(4).  "[M]alice, express[2] or implied" is conduct that is intended to injure a person or despicable conduct that is engaged in with a "conscious disregard" of the rights

---

[2] Express malice—intent to injure someone—is not applicable here as, among other things, Plaintiff did not allege that Leoncio committed an intentional tort. Express malice requires a showing of "hatred and ill-will" or of a defendant's motive to "vex, harass, annoy, or injure." ***Craigo v. Circus–Circus Enter.,*** 106 Nev. 1, 786 P.2d 22, 23 (1990).

1    or safety of others. NRS 42.001(3). "Conscious disregard" requires a culpable state of mind, in

2    which the defendant's conduct "at a minimum, must exceed mere recklessness or gross

3    negligence." ***Countrywide Home Loans, Inc. v. Thitchener,*** 192 P.3d 243, 255 (2008) "Gross

4    negligence is substantially and appreciably higher in magnitude and more culpable than ordinary

5    negligence.  Gross negligence is equivalent to the failure to exercise even a slight degree of care.

6    It is materially more want of care than constitutes simple inadvertence.  It is an act or omission

7    respecting legal duty of an aggravated character as distinguished from a mere failure to exercise

8    ordinary care." ***Racine v. PHW Las Vegas, LLC***, 46 F. Supp. 3d 1028, 1044 (D. Nev. 2014)

9    (*citing* ***Hart v. Kline***, 61 Nev. 96, 116 P.2d 672, 674 (1941)).

10          There is no admissible evidence indicating, demonstrating or even suggesting that

11   Leoncio's actions constitute any of the aggravating factors necessary for an award of punitive

12   damages.  First, there is no evidence that Leoncio's alleged conduct – which is alleged to be the

13   crossing of the lane line delineating the space between the number 3 travel lane and the

14   emergency shoulder of the freeway (which is not a through-lane or travel lane) with a portion of

15   the tractor he was operating – can reasonably characterized as involving "malice," or

16   "oppression," particularly considering that Leoncio testified that he did not, in fact, drive onto the

17   shoulder or emergency lane until after the accident.  *See* **Exhibit 2**.  Although Plaintiff has

18   attempted to manufacture evidence that Leoncio deliberately crossed into the shoulder in an effort

19   to either get in front of Richards and Plaintiff or, to cut them off, Plaintiff has not identified or

20   produced any admissible evidence – other than Richards' self-serving deposition testimony –

21   indicating that Leoncio did any such thing.

22          Leoncio adamantly testified that he did not enter into the shoulder at any time before the

23   accident as he would not want to endanger his young son, Kevin Angeles, who was with Leoncio

24   in the cab of the truck at the time Richards' lost control of his car. *See* **Exhibit 2** at pp.182:19 –

25   184:11.  ("My son was also with me and he saw the way that I was driving. I was not going to put

26   at risk the life– my son's life.").  There is no admissible evidence that Leoncio *intended to injure*

27   *plaintiff* or anyone else, or that he engaged in any conduct with a "conscious disregard" of the

28   rights or safety of others.  To be sure – even if he did partially enter the shoulder or emergency

1   lane prior to the event at issue and as Plaintiff claims (and which Leoncio and the Legacy

2   Defendants dispute), there is no *clear and convincing evidence* that Leoncio drove into the

3   shoulder with the intent to injure plaintiff (or anyone else) or that he did so with a "conscious

4   disregard" of the rights or safety of others.

5          The type of accident at issue is not one in which punitive damages should be considered

6   against Leoncio – although if Plaintiff had elected to file suit against Richards, it stands to reason

7   she would be able to recover punitive damages against him based on his egregious conduct.  On

8   point in this regard is the decision in ***Turner v. Werner Enter., Inc.,*** 442 F.Supp.2d 384 (E.D.

9   Ky. 2006) where the driver of a tractor-trailer was alleged to have fallen asleep while driving and

10  struck a pickup truck occupied by plaintiffs.  It was undisputed that the defendant driver was not

11  speeding, was in the proper lane, and was not intoxicated. *Id.* at 386. Assuming that the driver

12  could be found to have been negligent, the court held as a matter of law that the evidence could

13  not support a finding that the driver was grossly negligent as required for an award of punitive

14  damages. *Id.* at 38.  In so holding, the court in ***Turner*** cited to ***Kinney v. Butcher***, 131 S.W.3d

15  357 (Ky.App.2004), a case in which the defendant driver was speeding and attempting to pass

16  another car on a two-lane road in a no-passing zone. In affirming the trial court's refusal to give a

17  punitive damages instruction, the Kinney court observed:

18          We agree with the trial court's assessment of the circumstances of this case to
            the effect that traveling at a possible speed of ten miles per hour in excess of the
19          posted speed limit and failing to complete a pass before entering a no-passing
            zone constitute nothing more than ordinary negligence. *Were we to accept*
20          *Kinney's argument that it amounts to wanton or reckless disregard for the safety*
            *of others, it would effectively eliminate the distinction between ordinary and*
21          *gross negligence in the context of automobile accidents.* Nearly all auto

            accidents are the result of negligent conduct, though few are sufficiently
22          reckless as to amount to gross negligence, authorizing punitive damages.
23
    *See **Turner*** at 359. (emphasis added).
24

25          The analysis articulated by the court in ***Turner*** and ***Kinney*** equally applies to this case,

26  particularly considering that the court in ***Turner*** held that the evidence in that case did not

27  support a punitive damages award despite the defendant's driver's admission that he was sleepy

28  but nonetheless continued driving, thereafter fell asleep and caused the accident with plaintiffs.  If

1   those facts do not support a punitive damages award (where the defendant driver <u>admits</u> to being

2   fatigued, continues driving rather than stopping, then *<u>falls asleep while driving</u> <u>and then causes an</u>*

3   <u>accident</u>)  then, certainly, the facts of this case do not support an award of punitive damages

4   (Leoncio denies being fatigued and denies intentionally driving into the emergency lane with his

5   tractor and there is no evidence that the accident at issue occurred because Leoncio intentionally

6   drove on to the emergency lane/shoulder).  *See **Harris v. MVT Services, Inc.**,* 2007 WL 2609780,

7   *3 (S.D. Miss. 2007) (Summary judgment granted in favor of defendant on punitive damages

8   claim in case where Plaintiff alleged defendant driver who allegedly caused accident could not

9   adequately read, write or speak English and was, at the time of the accident, "'in gross violation'

10   of certain FMCSR [Federal Motor Carrier Safety Regulations] provisions regarding driving

11   without rest 'and other FMCSR mandates' because the lawsuit was "an ordinary negligence case

12   involving a careless driver, not a wanton or reckless driver." )

13        To permit the jury to consider punitive damages against Transport based on Leoncio's

14   alleged negligent conduct in this case would render meaningless the distinction between ordinary

15   negligence and conduct evidencing "oppression" or "malice."  It would make almost any

16   purportedly negligent act committed while driving a basis for the imposition of punitive damages.

17   Such a result would run contrary to the specific yet limited purposes that punitive damages are

18   meant to serve. *See **State Farm Mut. Auto. Ins. Co. v. Campbell**,* 538 U.S. 408, 419, 123 S.Ct.

19   1513 (2003) (noting that "punitive damages should only be awarded if the defendant's culpability,

20   after having paid compensatory damages, is so reprehensible as to warrant the imposition of

21   further sanctions to achieve punishment or deterrence") (citing ***BMW of North America, Inc. v.***

22   ***Gore***, 517 U.S. 559, 575, 116 S.Ct. 1589,134 L.Ed.2d 809 (1996)). Leoncio's alleged conduct

23   simply does not meet the aggravating factors that are typically applied to automobile or tractor

24   accident cases in which the defendant driver's conduct is "so reprehensible" as to warrant the

25   imposition of punitive damages, such as when drugs, alcohol or grossly excessive speed are

26   alleged to be a causal factor.  *See, e.g., **Dawes v. Superior Court**,* 111 Cal. App. 3d 82, 89, 168

27   Cal. Rptr. 319, 323 (Ct. App. 1980) (intoxicated driver ran a stop sign, zigzagged in and out of

28   traffic traveling over 65 mph in a 35 mph zone in a crowded beach recreation area in the

1  afternoon); *Peterson v. Superior Court*, 31 Cal. 3d 147, 162, 642 P.2d 1305, 1314 (1982)

2  (intoxicated driver drove over 75 mph and lost control of the vehicle); *Reeves v. Carlson*, 266

3  Kan. 310, 314, 969 P.2d 252, 256 (1998)(intoxicated driver ran a stop sign and hit a house).

4  

**IV.    CONCLUSION**

5         For the reasons set forth above, Transport is entitled to summary judgment on Plaintiff's

6  second claim for relief for respondeat superior; Plaintiff's third claim for relief for punitive

7  damages; Plaintiff's Fourth claim for relief for negligent employment, supervision and training,

8  and Plaintiff's prayer for punitive damages.

9         Dated this 31st day of July, 2017.

10                                         HALL JAFFE & CLAYTON

11
                                           By: *Jason R. Wigg*
12                                         STEVEN T. JAFFE
                                           Nevada Bar No. 7305
13                                         JASON R. WIGG, ESQ.
                                           Nevada Bar No. 7953
14                                         7425 Peak Drive
                                           Las Vegas, NV 89128
15                                         (702) 316-4111
                                           *Attorneys for Defendants/Third-Party Plaintiffs*
16                                         *Legacy Transportation Systems, LLC, Angeles*
                                           *Transportation, LLC & Leoncio Angeles*

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 31st day of July 2017, the foregoing **ANGELES TRANSPORTATION, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was duly served in accordance with the provisions of Rule 5(b) of the Federal Rules of Civil Procedure to all parties or their attorney by the method indicated below:

_____     by deposit thereof, enclosed in a post-paid, properly addressed wrapper, in a post office or an official depository under the exclusive care and custody of the United States Postal Service, to the address(es) set forth above.

_____     by hand delivery by handing it to each attorney or party or by leaving it at the attorney's office with a partner or employee at the office address(es) set forth above.

_____     by confirmed facsimile transmittal received at the facsimile number(s) set forth above prior to 5:00 p.m. this date, as evidenced by a facsimile transaction report.

__X__     by electronic filing via ECF pursuant to the Administrative Procedures Governing the Filing and Service by Electronic Means of the United States District Court for the District of Nevada.

*/s/ Jason R. Wigg*
An Employee of HALL JAFFE & CLAYTON, LLP