UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SARAH DIXON,<br><br>                      Plaintiff,<br>  v.<br><br>LEGACY TRANSPORTATION SYSTEMS, LLC, et al.,<br><br>                      Defendants. | Case No. 2:15-cv-01359-JAD-PAL<br><br>ORDER<br><br>(Mot Strike – ECF No. 102) |

Before the court is Defendants'/Third-Party Plaintiffs' Motion to Strike Plaintiff's Rebuttal Expert Dan Berkabile (ECF No. 102). The court has reviewed the motion, Plaintiff's Opposition (ECF No. 106), and Defendants//Third-Party Plaintiffs' Reply (ECF No. 116). The court also heard oral argument from counsel at a hearing conducted September 5, 2017. Eric Dobberstein appeared on behalf of plaintiff, Benjamin Carman appeared on behalf of defendant Ryan Richards, and Steven Jaffe and Jason Wigg appeared for the remaining defendants.

**BACKGROUND**

This case involves an August 13, 2013 multi-vehicle collision on I-15 south of Las Vegas between Jean and Primm, Nevada. Plaintiff Sarah Dixon ("Dixon") was a passenger in a 2009 Mitsubishi being driven by her then-boyfriend, defendant Ryan Richards ("Richards"). Both Dixon and Richards were in the United States Marine Corps at the time and returning to Camp Pendleton after a trip to Las Vegas. Defendant Leoncio Angeles ("Angeles") was driving a tractor trailer leased from defendant Legacy Transportation Systems, LLC ("Legacy"). The Mitsubishi and tractor trailer collided. The parties dispute who was at fault for the accident. Plaintiff claims that Angeles suddenly pulled his tractor trailer into the emergency lane blocking the Mitsubishi being driven by Richards as Richards was in the process of trying to merge back into freeway

1

traffic. Plaintiff clams Richards was forced out of the emergency lane to avoid hitting the tractor trailer, lost control, and swerved onto the freeway striking two vehicles before ending up stopped in the middle traffic lane. Plaintiff claims Angeles was cited and pled guilty to making an unsafe lane change and is at fault for the accident. Legacy claims that Richards was at fault for the accident because he was highly intoxicated, and driving recklessly at a high rate of speed on the shoulder of the road. What is not disputed is that Dixon was airlifted from the accident to UMC where she was treated for life-threatening injuries.

The Complaint (ECF No. 1) in this case was filed July 17, 2015. The parties requested and received special scheduling review when the court approved a joint proposed Discovery Plan and Scheduling Order (ECF No. 23) on October 21, 2015. The initial discovery plan and scheduling order established an April 18, 2016 deadline for disclosure of experts, and a June 13, 2016 deadline for completing discovery. The parties requested and received two extensions of the discovery plan and scheduling order deadlines extending the deadline for disclosure of experts until May 31, 2016, and later to October 21, 2016. A third stipulation to extend the deadlines was filed by the parties on December 19, 2016 (ECF No. 39). At a hearing held on January 10, 2017, on their third request for extension, the court was dissatisfied with the parties' discovery progress and required the parties to schedule all remaining discovery and inform the court of what specific discovery was still needed to be completed as well as proposed schedule for completing that discovery. *See* Minutes of Proceedings (ECF No. 49). The court was also skeptical about defendants' claims they should receive another extension of the expert disclosure deadline because they had been unable to retain a trucking standard of care expert because their own client, Angeles, had not yet been deposed. The parties submitted a stipulated discovery plan and proposed order which the court approved extending the deadline for defendant to disclose a trucking standard of care expert until February 17, 2017. However, all other initial expert disclosures were closed.

This litigation has become increasingly contentious, and the court has decided many, many discovery disputes. It is apparent that there have been communication breakdowns among counsel that have contributed to counsel imputing bad faith and ill motives to one another that have resulted

in an inordinate amount of motion practice on matters counsel would ordinarily work out among themselves without judicial intervention.

**DISCUSSION**

In the current motion, defendants seek to strike plaintiff's rebuttal expert, Dan Berkabile. Plaintiff disclosed Mr. Berkabile as a rebuttal expert to defendants' toxicologist, Dr. William Anderson. Dr. William Anderson is a forensic toxicologist who prepared an expert report on October 21, 2016, offering opinions, including his analysis of the alcohol concentration in defendant Ryan Richards' blood, his level of intoxication and impairment including reaction times and judgment, and the amount of alcohol ingested by Mr. Richards. On January 3, 2017, plaintiff disclosed Mr. Berkabile, a forensic toxicologist, as a rebuttal expert to defendants' toxicologist, Dr. Anderson. Mr. Berkabile was deposed by defense counsel on February 10, 2017. At his deposition, Mr. Berkabile testified under oath that his report was not a rebuttal report, and he did not rebut or refer to anything from Dr. Anderson's report, or even consider Dr. Anderson's report while preparing his own report. Defendants argue that under these circumstances, the court should grant Legacy's motion to strike to avoid the expenditure of time and money litigating spurious issues prior to trial. Mr. Berkabile was clearly "mis-designated" as a rebuttal expert which is defined by Rule 26(a)(2)(D)(ii) as a witness "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Mr. Berkabile's opinions and testimony are not truly rebuttal in nature. The court must therefore exclude his testimony under Rule 26 and 37(c)(1) unless the court finds his failure to timely disclose Berkabile as an expert witness is harmless or substantially justified.

Plaintiff opposes the motion arguing Berkabile's findings rebut Legacy's expert on several issues. Specifically, Mr. Berkabile rebuts Dr. Anderson concerning Ryan Richards' blood alcohol concentration at the time of the collision. Defendants argue that Richards was highly intoxicated at the time of the accident. Plaintiff disputes this. Richards was not cited, arrested, or convicted of DUI in this case. Berkabile's report and testimony address the same subject matter on which Dr. Anderson has offered opinions, that is, whether Richards was under the influence or impaired at the time of the collision. Berkabile's opinions rebut Dr. Anderson's opinions about Richards'

BAC (blood alcohol concentration) based on Richards' testimony that he ate breakfast the day of the accident and Berkabile's knowledge that Richards was suffering from trauma from a collision. Berkabile has opined that both of these circumstances affect alcohol absorption rates, and that it is impossible to determine if Richard was intoxicated at the time of the collision.

Plaintiff also asserts that even if she "mis-designated" Berkabile as a rebuttal expert instead of an initial expert, exclusion is not the appropriate remedy. Berkabile's report was disclosed more than six months ago. Berkabile was deposed February 10, 2017, and there is no evidence of bad faith or surprise to the defendants. If the court believes Berkabile had an advantage from being able to see Dr. Anderson's report prior to preparing his own report, the court should limit his testimony to initial expert testimony only and not rebuttal. Legacy will be able to rebut Berkabile's testimony at trial and has not been prejudiced in any way as his proposed testimony was fully disclosed well before trial.

Defendants reply that it is undisputed that: (1) Berkabile's opinion was not offered to rebut Dr. Anderson's testimony; (2) Berkabile testified he intended his report to interpret what took place from a toxicology point of view; (3) Anderson was not on Berkabile's mind when Berkabile wrote his own report; (4) Berkabile read Dr. Anderson's report, but there was nothing to rebut; and (5) Berkabile had not read Anderson's December 2016 supplemental report before being deposed. Dr. Anderson addressed the deleterious effects of alcohol on the nervous system and driving skills, and offered opinions that it is universally accepted that a .08 BAC causes impairment. Richards' blood was measured at .107 after the accident and was impaired. Allowing plaintiff to re-designate Berkabile as an initial expert would reward plaintiff's failure to comply with the Federal Rules of Civil Procedure and the court's discovery plan and scheduling order deadlines. It would allow plaintiff to have the benefit of Berkabile's testimony during her case in chief. If the court finds that Berkabile is not a rebuttal expert, Rule 37(c)(1) sanctions are necessary, and converting Berkabile from a rebuttal expert to an initial expert would amount to no sanction at all. Finally, defendants argue that reopening discovery to allow Legacy to designate a rebuttal expert to rebut Berkabile's testimony would result in further delay, increase costs, and would disrupt the court's management of its docket.

1 | Having reviewed and considered the moving and responsive papers, voluminous exhibits, and the arguments of counsel, the court finds Mr. Berkabile should have been offered as an initial expert witness. His report and testimony clearly establish he was not asked to rebut Dr. Anderson's October 2016 expert report. Berkabile clearly testified that he did not write his report with Dr. Anderson's October opinions in mind, and had not seen his December 2016 supplemental report. However, the court has reviewed Dr. Anderson's supplemental December 20, 2016 report which was attached as Exhibit 9 to plaintiff's opposition. This report supplemented his initial October 16, 2016 report and opinions. Among the opinions he provided is that Richards had a BAC of .135 at the time of the accident. He based this opinion on deposition testimony and police reports. Dr. Anderson extrapolated Richards' BAC by applying scientific principles about the elimination and absorption rates of alcohol on an individual.

Distilled to its essence, Mr. Berkabile's report and deposition testimony opines on basic absorption/elimination or metabolism of alcohol in the blood. He used the accident report indicating that the accident occurred at 15:43 hours. Based on Richards' report that he ate breakfast and the fact it is scientifically well known that trauma from a serious accident effects alcohol absorption, Mr. Berkabile concluded "with a reasonable degree of medical and scientific certainty that it is not only unknown, but also undeterminable if Ryan Richards was impaired and/or under the influence of alcohol at the time of the accident." Although it is clear Mr. Berkabile was not retained to rebut Dr. Anderson's initial opinions and testimony, his report does rebut Dr. Anderson's supplemental report concerning Richards' BAC at the time of the accident. The court will therefore preclude plaintiff from calling Mr. Berkabile in her case in chief, but allow him to testify if Dr. Anderson testifies about Richards' BAC at the time of the accident.

**IT IS ORDERED** that the motion is **Granted in part and denied in part.**

1. The Motion to Strike (ECF No. 102) Berkabile as a witness in plaintiff's case in chief is **GRANTED**.

/ / /

/ / /

/ / /

5

2. The motion to strike Berkabile from testifying under any circumstances is **DENIED**. Mr. Berkabile may testify as a rebuttal expert if and only if Dr. Anderson testifies regarding his opinions of Richards' BAC at the time of the collision.

DATED this 6th day of September, 2017.

                                                                  _____
                                                                  PEGGY A. LEEN
                                                                  UNITED STATES MAGISTRATE JUDGE