UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SARAH DIXON,<br><br>       Plaintiff,<br>v.<br><br>LEGACY TRANSPORTATION SYSTEMS, LLC, et al.,<br><br>       Defendants. | Case No. 2:15-cv-01359-JAD-PAL<br><br>ORDER<br><br>(Mot Preclude – ECF No. 119/120) |

Before the court is Defendants'/Third-Party Plaintiffs' Motion to Preclude Dr. Kathleen D. Smith Hamilton from Testifying or, Alternatively, to Order an Evidentiary Hearing (ECF No. 119/120). The court has reviewed the motion, Plaintiff's Opposition (ECF No. 127), and Defendants//Third-Party Plaintiffs' Reply (ECF No. 132). The court also heard oral argument from counsel at a hearing conducted September 5, 2017. Eric Dobberstein appeared on behalf of plaintiff, Benjamin Carman appeared on behalf of defendant Ryan Richards, and Steven Jaffe and Jason Wigg appeared for the remaining defendants.

## **BACKGROUND**

This case involves an August 13, 2013 multi-vehicle collision on I-15 south of Las Vegas between Jean and Primm, Nevada. Plaintiff Sarah Dixon ("Dixon") was a passenger in a 2009 Mitsubishi being driven by her then-boyfriend, defendant Ryan Richards ("Richards"). Both Dixon and Richards were in the United States Marine Corps at the time and returning to Camp Pendleton after a trip to Las Vegas. Defendant Leoncio Angeles ("Angeles") was driving a tractor trailer leased from defendant Legacy Transportation Systems, LLC ("Legacy"). The Mitsubishi and tractor trailer collided. The parties dispute who was at fault for the accident. Plaintiff claims that Angeles suddenly pulled his tractor trailer into the emergency lane blocking the Mitsubishi

1

being driven by Richards as Richards was in the process of trying to merge back into freeway traffic. Plaintiff clams Richards was forced out of the emergency lane to avoid hitting the tractor trailer, lost control, and swerved onto the freeway striking two vehicles before ending up stopped in the middle traffic lane. Plaintiff claims Angeles was cited and pled guilty to making an unsafe lane change and is at fault for the accident. Legacy claims that Richards was at fault for the accident because he was highly intoxicated, and driving recklessly at a high rate of speed on the shoulder of the road. What is not disputed is that Dixon was airlifted from the accident to UMC where she was treated for life-threatening injuries.

The Complaint (ECF No. 1) in this case was filed July 17, 2015. The parties requested and received special scheduling review when the court approved a joint proposed Discovery Plan and Scheduling Order (ECF No. 23) on October 21, 2015. The initial discovery plan and scheduling order established an April 18, 2016 deadline for disclosure of experts, and a June 13, 2016 deadline for completing discovery. The parties requested and received two extensions of the discovery plan and scheduling order deadlines extending the deadline for disclosure of experts until May 31, 2016, and later to October 21, 2016. A third stipulation to extend the deadlines was filed by the parties on December 19, 2016 (ECF No. 39). At a hearing held on January 10, 2017, on their third request for extension, the court was dissatisfied with the parties' discovery progress and required the parties to schedule all remaining discovery and inform the court of what specific discovery was still needed to be completed as well as proposed schedule for completing that discovery. *See* Minutes of Proceedings (ECF No. 49). The court was also skeptical about defendants' claims they should receive another extension of the expert disclosure deadline because they had been unable to retain a trucking standard of care expert because their own client, Angeles, had not yet been deposed. The parties submitted a stipulated discovery plan and proposed order which the court approved extending the deadline for defendant to disclose a trucking standard of care expert until February 17, 2017. However, all other initial expert disclosures were closed.

This litigation has become increasingly contentious, and the court has decided many, many discovery disputes. It is apparent that there have been communication breakdowns among counsel that have contributed to counsel imputing bad faith and ill motives to one another that have resulted

1  in an inordinate amount of motion practice on matters counsel would ordinarily work out among
2  themselves without judicial intervention.

## **DISCUSSION**

In the current motion, defendants seek to preclude plaintiff's expert, Dr. Smith, from testifying in this case, or in the alternative, an order conducting an evidentiary hearing. As grounds for the motion, defendants claim that Dr. Smith perjured herself at her deposition when she gave dishonest and deceptive testimony regarding her purported fees, her file documents, her curriculum vitae ("CV"), the scope of her opinions, and the lapses in her board certification. Specifically, defendants claim that Dr. Smith attempted to mislead or deceive them by: (1) withholding documents from her billing file; (2) lying under oath about whether she submitted a bill for her services to plaintiff's counsel, or was paid compensation beyond the amount paid as a retainer; (3) offered false testimony on her board certifications; (4) intentionally withheld information from the CV to prevent others from learning about two malpractice lawsuits and a complaint by the State Board of Medical Examiners; and (5) withheld testimony about her supplemental report. Defendants argue that the court has broad discretion to preclude expert testimony. Defendants maintain that Dr. Smith's CV was evasive and incomplete and her credibility is at issue. Defendants claim that in light of the magnitude of her dishonesty "the court should forego the charade of parading Dr. Smith through, allowing her the privilege of expert status, only to be shot down constantly before the jury." The court should therefore preclude her from testifying at all in this case.

Plaintiff opposes the motion pointing out that this is the defendants' third attempt to exclude Dr. Smith from providing expert findings in this case. Legacy's own expert, Dr. Mary Ann Shannon, does not challenge plaintiff's medical treatment, or the causal relationship of her injuries to this accident, or whether the charges are reasonable or customary; still, defendants persist in attempting to preclude Dr. Smith from testifying at all. Dr. Smith's credibility is for the jury to decide. Legacy has engaged in a strategy to exaggerate any issues regarding Dr. Smith to exclude her opinions in their entirety. While counsel for plaintiff acknowledges that Dr. Smith left off certain information from her CV, she testified honestly during her deposition. She admitted

the possible gaps in her board certifications.  She corrected her CV after omissions concerning her prior places of employment were questioned during her deposition.  She also admitted two malpractice complaints and one Medical Board complaint had been filed against her and provided testimony about those cases.  Plaintiff disputes that Dr. Smith was deceptive about her supplemental report.  Plaintiff's counsel served defense counsel with her supplemental report on March 31, 2017, five days before her scheduled deposition, and did not realize that opposing counsel had not received it before her deposition.  Finally, plaintiff claims that the court should deny the motion because the defendants' hands are unclean.  Defense counsel waited for nearly two months to file the motion although there was still sufficient time remaining before the discovery cutoff to rectify any problems about document productions or gaps in her testimony.

Defendants reply that just because Dr. Shannon agrees with some of Dr. Smith's conclusions does not relieve the plaintiff of her burden of proof.  The court has the inherent authority to sanction the plaintiff for abusive litigation tactics and practices.  This includes discovery abuses.  False testimony is an improper litigation tactic which should result in Dr. Smith's exclusion as an expert witness in this case.

Having reviewed and considered the voluminous moving and responsive papers and supporting exhibits, and the arguments of counsel at the hearing, the court will deny the motion.  The court has neither the time nor the resources to comprehensively cite the portions of Dr. Smith's 84-page deposition that was taken in this case and attached as an exhibit to defendants' motion to support the court's conclusion that there is no persuasive evidence that Dr. Smith lied under oath.  This is an especially contentious litigation.  It has been hard fought, and matters normally resolved by experienced, reasonable counsel have been submitted for judicial decision.  The court finds defense counsel's arguments concerning Dr. Smith are less than objective and jaundiced by the contentious litigation history of this case. Dr. Smith's CV omissions and testimony on the subjects outlined in this motion may certainly call into question her credibility.  They do not, however, disqualify her from testifying at all.

By way of illustration, there was certainly a billing dispute between Dr. Smith and plaintiff's counsel, Mr. McCullough, who retained her to conduct a medical records review and

write an expert report. Dr. Smith testified at her deposition that she was paid a $2,500 retainer and her agreement was to bill $500/hr. for her expert services. She expected to be paid $500 an hour for expert services. She also testified about a billing dispute with Mr. McCullough when she submitted her 70-page expert report and an invoice for $28,000. She testified she did not have any bills and accepted the retainer and did not bill anything further. It is clear that she did invoice plaintiff's counsel for more money and that she corresponded with him about the billing. However, it also seems clear, and the court finds, that she accepted less than she billed realizing her work product was not worth the $28,000 she billed for the time she spent. In a nutshell, she testified that after discussing the matter with Mr. McCullough, she acknowledged that it would be "ridiculous" to charge $28,000 for a report which took her too long to review everything and prepare her report. (… it took me so long that it was a—it would have been ridiculous to bill 500 an hour. … it took me so long… and it was no fault of the attorneys. I wasn't going to bill the attorney for this. …") She did not produce the invoices or any correspondence regarding the dispute between her invoice and what counsel who retained her expected to pay for her expert services. However, her deposition testimony seems clear that although she expected to be paid more, she realized that her work took too long, the attorneys were not responsible for the time it took, and she ultimately agreed to accept the retainer as a fee for the work she did in preparing her report. There was at least one invoice and correspondence regarding the billing that was not produced at or before Dr. Smith's deposition. These documents were produced after Dr. Smith's deposition when plaintiff's counsel revealed the nature of the dispute in a May 2017 hearing before the court. Defense counsel stated at oral argument on this motion that he was "furious" to learn about the billing dispute and believed then and now that Dr. Smith had perjured herself. The court is not so persuaded. Plaintiff's counsel stated at oral argument on this motion that the "young associate" who was a "warm body" at Dr. Smith's deposition probably had no idea of the billing dispute at the time of Dr. Smith's deposition, and therefore did not realize any responsibility to correct the record about these billing issues. Under the circumstances the court finds this explanation credible, if a bit disturbing.

Dr. Smith did not state during her deposition that she had prepared a supplemental report opining that plaintiff's Las Vegas medical bills were reasonable and customary for this area. She was asked about her supplemental report which counsel for plaintiff served by mail March 31, 2017 before her April 4, 2017 deposition without confirming that opposing counsel actually received it. The court attributes this failure to plaintiff's counsel, the young associate "warm body" sent to defend the deposition, not Dr. Smith.

There were clearly critical omissions from Dr. Smith's CV that was produced as part of her expert disclosure. The three omissions correspond to the two lawsuits and one complaint filed against her by the Board of Medical Examiners while she was employed by the three entities omitted from her CV. These omissions, of course, do not depict Dr. Smith in a particularly favorable light. She failed to list her employers during the times she was sued and responding to a Medical Board complaint. The court doubts this was an inadvertent omission, especially because she was a part owner of one of the entities. However, when questioned about her employment during these periods of time, she answered the questions and acknowledged her employment and their omission from her CV. She also acknowledged the prior complaints and answered questions about them. When questioned about the length of her board certifications for the two fields in which she was board certified and confronted about the apparent gaps, she acknowledged her CV was probably in error. There is plenty of room to cross-examine and impeach Dr. Smith on the issues raised in the motion. However, the court finds defendants have not shown that she perjured herself, or that her omissions from her CV disqualify her from testifying in this case. Accordingly,

**IT IS ORDERED** that Defendants'/Third-Party Plaintiffs' Motion to Preclude Dr. Kathleen D. Smith Hamilton from Testifying or, Alternatively, to Order an Evidentiary Hearing (ECF No. 119/120) is **DENIED**.

DATED this 6th day of September, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE